UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

LeRoy Paulson,

Plaintiff,

vs. ORDER

Plainfield Trucking, Inc.,

Defendant. Civ. No. 01-1474 (RHK/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 29th day of April, 2002.

## I. Introduction

On April 4, 2002, the Court heard argument on the Plaintiff's Motion to Compel, and on the Defendant's informal Motion for a Protective Order. At the time of the Hearing, the Plaintiff LeRoy Paulson ("Paulson") appeared by Jason D. Patterson, Esq., and the Defendant Plainfield Trucking, Inc. ("Plainfield") appeared by Stacy E. Cudd, Esq. For reasons which follow, both Motions are granted in part, and denied in part.

## II. Procedural and Factual Background

This case arises out of an accident that occurred on February 22, 2000. At that time, Paulson was driving a tow truck, which crashed into the rear of a semi-trailer which was being driven by Steven Utley ("Utley"), who was then an employee of Plainfield.

FILED APR 29 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

The accident occurred when Utley was stopped, outside of Royal Farms, on a divided highway, while waiting to turn left into the Royal Farms' warehouse. Apparently, visibility was reduced at the time because of fog.

As a result of the accident, Paulson is suing Plainfield, alleging that it was negligent for a number of reasons, including the stopping of the semi-trailer on the roadway in fog; the operation of a second semi-trailer so as to block the entrance to the warehouse; the failure to comply with Royal Farms' directive to use separate entrances; the failure to space trucks in intervals as required by Royal Farms; the failure to clean trucks; the failure to use reflective tape; and the failure to erect hazard signs, warnings, or flares.

In an Interrogatory, Paulson has asked Plainfield for the name and address of each person who, on behalf of Plainfield, hauled to or from Royal Farms on the date of the accident. Plainfield provided a list of sixteen present employees, but it refused to provide the home addresses for those employees. It also provided a list of five former employees, as well as their addresses. Plainfield has advised Paulson that it objects to any attempt by him to contact current employees, as well as Ultey, as part of Paulson's informal investigation. As for Utley, Paulson does admit that his investigator spoke with Utley, by telephone, prior to

commencement of this litigation, but that the investigator does not have any statements, notes, reports, or other disclosures, relating to that conversation.

Paulson now seeks an Order compelling Plainfield to provide the addresses of the sixteen current employees it identified in its Answer to Paulson's Interrogatory. Paulson requests confirmation that it can conduct ex parte communications with these individuals, as he believes that such contacts are allowable under Rule 4.2, Minnesota Rules of Professional Conduct. In contrast, Plainfield contends that a blanket prohibition on contact with either its current employees, or Utley, is necessary, as the employees' statements may constitute an admission of the corporation.[1]

III. Discussion

Rule 4.2 of the Minnesota Rules of Professional Conduct, provides as follows.

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other

[1]Plainfield also requests that the Court issue a Protective Order, which precludes the depositions of any of its present or former truckers, other than Utley, as it believes that they possess no relevant information. Moreover, if the depositions do occur, Plainfield urges that Paulson be required to conduct the depositions either at Plainfield's place of business, or in the employees' County of residence, rather than in Duluth, where they were tentatively scheduled to occur.

> lawyer or is authorized by law to do so. A party who is a lawyer may communicate directly with another party unless expressly instructed to avoid communication by the lawyer for the other party, or unless the other party manifests a desire to communicate only through counsel.

This Rule is not unique in national jurisprudence, but is similar to those in most, if not all, States.

The Comment to Rule 4.2 provides further instruction with respect to the Rule's application in the context of organizations. Specifically, the Comment states:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Id., at Comment -- 1985.

Many Courts have concluded that a statement which may constitute an "admission" on the part of an organization, as referred to in Rule 4.2, references Rule 801(d)(2), Federal Rules of Evidence. See, e.g., Weibrecht v. Southern Ill. Transfer, Inc., 241 F.3d 875, 883 (7th Cir. 2001); Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc., 144 F. Supp.2d 1147, 1156 (D.S.D. 2001); Cole v. Appalachian Power Co., 903 F. Supp. 975, 976 (S.D. W.Va. 1995); Brown v. St.

Joseph Co., 148 F.R.D. 246, 254 (N.D. Ind. 1993). Other Courts have rejected this interpretation, either because their States' evidentiary rule is different from Rule 801, Federal Rules of Evidence, see, Niesig v. Team I, 558 N.E.2d 1030, 1035 (N.Y. 1990), or because the Court does not believe the evidentiary rule is an ethical rule, and that such an interpretation would not foster the attorney-client interests that the ethical rules are designed to protect, see, e.g., Messing, Rudavsky & Seliky, P.C. v. President and Fellows of Harvard College, 764 N.E.2d 825, 833 (Mass. 2002);[2]

---

[2]Even though the Court, in Messing, Rudavsky & Weliky, P.C., v. President and Fellows of Harvard College, 764 N.E.2d 825, 833 (Mass. 2002), rejected the incorporation of Rule 801(d)(2)(D) into its interpretation of the ethical rule, it nonetheless acknowledged the probability that the ethical rule did refer to the evidentiary Rule. The Court stated as follows:

> Although the comment's reference to persons "whose statement may constitute an admission on the part of the organization" was most likely intended as a reference to Fed.R.Evid. 801(d)(2)(D), this interpretation would effectively prohibit the questioning of all employees who can offer information helpful to the litigation. We reject the comment as overly protective of the organization and too restrictive of an opposing attorney's ability to contact and interview employees of an adversary organization.

Id.

The Court thus interpreted the Rule "to ban contact only with those employees who have the authority to 'commit the organization to a position regarding the subject matter of representation.'" Id., quoting Johnson v. Cadillac Plastic Group, Inc., 930 F. Supp. 1437, (continued...)

Johnson v. Cadillac Plastic Group, Inc., 930 F. Supp. 1437, 1442 (D. Colo. 1996); Branham v. Norfolk and Western Ry. Co., 151 F.R.D. 67, 70 (S.D. W.Va. 1993); Bouge v. Smith's Mgt. Corp., 132 F.R.D. 560, 567 (D. Utah 1990).

Rule 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The Rule specifically provides that a statement that is offered against a party, and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," is not hearsay. See, Rule 801(d)(2)(D), Federal Rules of Evidence. We conclude, as did the Court in Cole v. Appalachian Power Co., supra at 976, that "[t]he Comment's language, 'whose statement may constitute an admission on the part of the organization,' is an unmistakable reference to Evidence Rule 801(d)(2)(D) * * *," and, unlike other Courts, we do not believe it is our prerogative to ignore the substance of the Comment. Rather, as one Court explained:

> [T]his Court, like others, is concerned about attorneys circumventing the formal discovery rules through surreptitious means to produce evidence that will be admissible at trial as admissions against interest of the corporate

---

[2](...continued) 1442 (D. Colo. 1996).

> party. Such 'going behind the back of one's adversary' results in manifestly unfair trial practice that was meant to be avoided by the adoption of the Federal Rules of Civil Procedure.

Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc., supra at 1156.

Thus, the Court in Midwest Motor Sports adopted the view that Rule 4.2 is influenced by the strictures of Rule 801(d)(2)(D), Federal Rules of Evidence.

Rather than to erect a total ban on ex parte contacts with the current employees of a corporation, see, e.g., Lang v. Reedy Creek Imp. Dist., 888 F. Supp. 1143, 1149 (M.D. Fla. 1995), the Court, in Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc., supra at 1156, followed the lead of another Court, and held that "counsel or counsel's agent may not conduct ex parte interviews with five classes of an adversary corporation's or organization's current employees under Rule 4.2." See also, Cole v. Appalachian Power Co., supra at 979. Those five classes included:

> 1. Current officials of the corporation or organization who have managerial responsibility;
>
> 2. Other current corporate or organizational employees whose act or omission in connection with the matter may be imputed to the corporation or organization for purposes of civil or criminal liability;
>
> 3. Those who are responsible for implementing the advise of the corporation's or organization's lawyers;

> 4. Any members of the corporation or organization whose own interests are directly at stake in a representation; and
>
> 5. An agent or servant of the corporation or organization whose statement concerns a matter within the scope of the agency or employment, which statement was made during the existence of the relationship and which is offered against the corporation or organization as an admission. However, ex parte interviews of employees who are 'mere witnesses' to an event for which the corporation is sued (i.e., holders of factual information), are permitted.

Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc., supra at 1156; see also, Cole v. Appalachian Power Co., supra at 979.

With these precepts in mind, we turn to the current employees that Paulson wishes to interview.[3]

---

[3]Other than Utley, Plainfield does not appear to contest that Paulson can interview its former employees. According to Plainfield, the only former employees with information regarding either the accident, or observations before or after the accident, are Utley, Salvador Segovia ("Salvador"), and Juan Segovia ("Juan"). Salvador was the truck driver who followed behind Utley on the day of the accident, and witnessed the actual events leading up to the accident, as well as the accident itself. Juan was present at Royal Farms at the time of the accident and, while he did not witness the accident, he has information regarding what he observed before and after the accident took place. The only other former employees identified by Plainfield are Charles Frost ("Frost"), Amilcar Arjala ("Arjala"), and Joseph Dorgan ("Dorgan"). Neither Frost nor Arjala were at Royal Farms at the time of the accident, and Plainfield has been unable to locate Dorgan.

Rule 4.2 clearly does not limit Paulson's access to Plainfield's former employees. Unlike current employees, their statements cannot be construed as admissions, as the statements would not be made during the course and scope of their employment. See, Rule 801, Federal Rules of Evidence. Moreover, there is no indi-
(continued...)

Plainfield has identified sixteen current employees who were employed by it on the day of the accident. Of these sixteen, six of them were present at the Royal Farms warehouse at some point on February 22, 2000, but they did not witness the accident, as they had all either left Royal Farms before the accident occurred, or arrived later in the day -- well after the accident scene had been cleared.[4] Eight of the sixteen are simply employees of Plainfield, who were not actually at the Royal Farms' warehouse at all on February 22, 2000.[5] Plainfield has not been able to contact one

---

(...continued)
cation that these individuals were officials of the organization, or were responsible for implementing the advice of the corporation, and there is no contention, other than as to Utley, that the acts or omissions could be imputed to the organization. We, therefore, conclude that Paulson can conduct ex parte interviews of those former employees, excluding Utley, assuming that those individuals are not represented by counsel.

As for Utley, Paulson acknowledges that he cannot conduct ex parte contacts with Utley, although he also admits that his investigator did previously contact Utley by phone. While this conduct troubles the Court, Paulson assures the Court that there is no documentary evidence recounting the contact, and that the investigator will not be called to testify about the contact. Therefore, we deny the Defendant's request to require the Plaintiff to turn over the documentary evidence of the contact, and to exclude the admission, at Trial, of evidence regarding this contact, without prejudice to its renewal should circumstances change. At present, however, the Motion is moot.

[4]The six individuals were Richard Glaman, Melvin Russell, Raymond Scott, Andrew Miller, Duane Hansen, and Ryan Klumb.

[5]Those individuals are Darlene Engeldinger, Richard Santoni,
(continued...)

other current employee, Celso Rodriguez ("Rodriguez"), as he been out on the road driving truck, but it has advised that once it does contact Rodriguez, it will question him about his knowledge of the accident, and provide the information to Paulson.[6]

Thus, the only current employee remaining, who has information regarding the accident, is Robert Jankowski ("Jankowski"). Jankowski was the driver in front of Utley at the time of the accident and, while he did not witness or hear the accident, he did observe events, both before and after the accident took place, that may be relevant. There is no indication by Plainfield, let alone any evidence, that Jankowski occupies a management position at the corporation, that his acts or omissions could be imputed to the organ-

---

[5](...continued)
Vernon Hall, Brian Ruffalo, Alan Schrank, Harold Ratliff, Jr., Stanley Stubbe, Sr., and Chet Cwiklo.

[6]Even though Plainfield has represented that all of these individuals, except for perhaps Rodriguez, have no knowledge about the accident, Paulson has asked, nevertheless, for permission to conduct ex parte interviews of these current employees in order to verify that they do not possess any information concerning the accident. While we regard the proposed contacts as potentially burdensome to the employees, we believe that discovery should allow Paulson an opportunity to test the representations of Plainfield, and we will allow the contacts that Paulson proposes, but subject to the limitations that we detail in the text of this Order. As should be obvious, once an employee states that he or she does not have knowledge of the accident, or the state of Royal Farms' premises, on the day of the accident, the interview should promptly end, so as to mimimize the potential for harassment of those employees.

ization, or that he is responsible for implementing the advice of the corporation's lawyers. Moreover, while, in some circumstances, his admissions could potentially bind the company, he appears to be a "mere witness" to the events surrounding the accident, and therefore, he holds factual information which Paulson should be able to access. See, Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc., supra at 1157; Cole v. Appalachian Power Co., supra at 979. Thus, we will allow Paulson to conduct an *ex parte* interview of Jankowski.

Although we will allow Paulson to conduct an *ex parte* interview of Jankowski, as well as with several of Plainfield's current and former employees, we draw his attention to Rule 4.3, Minnesota Rules of Professional Conduct. The Rule provides as follows:

> (a) In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall clearly disclose whether the client's interests are adverse to the interests of such person and shall not state or imply that the lawyer is disinterested.
>
> (b) When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.
>
> (c) During the course of representation of a client a lawyer shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, on those issues as to which the interests of each person are or have a reasonable possibility of

> being in conflict with the interests of the client.

In order to ensure the dictates and purpose of the Rule are carried out, we will impose certain limitations on Paulson's contacts with Jankowski and Plainfield's current or former employees. Thus, in conducting the proposed ex parte conducts, we direct the attorney or the investigator for Paulson to fully disclose his or her representative capacity to the employee; state the reason for seeking the interview as it concerns Paulson and Plainfield; and inform the employee of his or her right to refuse to be interviewed, and his or her right to have their own counsel present. See, Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc., supra at 1157; Cole v. Appalachian Power Co., supra at 980. "The attorney or investigator shall not, under any circumstances, seek to obtain attorney-client or work product information from the employee." Midwest Motor Sports, Inc. v. Arctic Cat Sales, inc., supra at 1157; see also, Cole v. Appalachian Power Co., supra at 980. Failure to abide by these directions will result in the imposition of appropriate sanctions.

The only issue remaining is Paulson's request to take a limited number depositions of Plainfield's former and current employees, apart from Utley, regardless of whether they were at Royal Farms on the day of the incident, or whether they have any informa-

tion about the accident, in order to establish a record as to the policies and practices regarding arrival and departure to and from Royal Farms. Specifically, Paulson contends that Royal Farms had an established policy requiring a certain interval between the arrival of trucks, and use of alternative entrances, but contends that Plainfield ignored that policy. Plainfield opposes any attempt at taking those depositions, claiming they are irrelevant, since representatives of Royal Farms have already denied that there is a fifteen minute spacing interval requirement, or that Plainfield was supposed to alternate its trucks between the East and West entrances to Royal Farms.

We will not preclude the depositions of current or former employees of Plainfield. Rather, after Paulson is able to conduct its informal ex parte contacts with Plainfield's current and former employees, we anticipate that he will be able to more definitively determine whether depositions will be necessary, and appropriate. If, at that time, Plainfield still objects to the depositions, or the location of the depositions, it can bring the issue back to our attention at a time when the Record will be sufficiently complete so as to allow an informed judgment. On the basis of this Record, however, we cannot say that the conduct of the depositions requires the issuance of a Protective Order.

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiff's informal Motion to Compel is GRANTED, in part, and DENIED, in part, as more fully explained in the text of the Order.

2. That the Defendant's concomitant Motion for a Protective Order is GRANTED, in part, and DENIED, in part, as more fully explained in the text of this Order.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE