UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

LeRoy Paulson,

Plaintiff,

vs. ORDER

Plainfield Trucking, Inc.,

Defendant. Civ. No. 01-1474 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 14th day of March, 2003.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge, pursuant to the consent of the parties, in accordance with the provisions of Title 28 U.S.C. §636(c), upon the Defendant's Motion for Summary Judgment. At a Hearing on the Motion, the Plaintiff LeRoy Paulson ("Paulson") appeared by Jason D. Pederson, Esq. and the Defendant Plainfield Trucking, Inc. ("Plainfield"), appeared by Daniel A. Haws, Esq. For reasons which follow, we grant Plainfield's Motion in part.

## II. Factual and Procedural History

This is a negligence action that arises out of a motor vehicle accident which occurred on February 22, 2002, on Highway 26 in Morrison County, Minnesota. At the time of the accident, driver

MAR 1 4 2003
JUDGMENT ENTD
DEPUTY CLERK

visibility was considerably reduced due to fog. Paulson, who was operating a tow truck in the course of his employment, rear-ended a semi-trailer truck that was owned by Plainfield, and was being operated by Steven Utley ("Utley"). The accident occurred just adjacent to the Royal Farms Potato Warehouse ("Royal Farms"), which was Utley's destination. Utley, who was proceeding west on Highway 26, had bypassed the first entrance to Royal Farms -- the east entrance -- and was waiting to enter Royal Farms through its west entrance.

According to Plainfield, Utley was unfamiliar with the location of Royal Farms, and had followed another Plainfield truck driver, Robert Jankowski ("Jankowski"), to the location. Jankowski had passed the east entrance to Royal Farms, and had entered Royal Farms through the west entrance, ahead of Utley. Utley claims that, when he was hit from behind by Paulson, he was waiting, on Highway 26, with his left-turn signal activated, in order to allow oncoming traffic to pass so that he could cross the divided highway into Royal Farms' entrance.

In contrast, Paulson claims that Utley was not merely waiting on Highway 26, so as to allow oncoming traffic to clear, but he had actually stopped on the Highway, because his entry into Royal Farms was blocked by another Plainfield truck. Paulson also claims that the truck's turn-signal was not activated. As a consequence, Paul-

son commenced this action, in which he alleges that, if it were not for Plainfield's own negligence, he would not have hit Utley's truck. Paulson assigns the following asserted acts of negligence to Plainfield, or to Plainfield's agents:

> 1. Stopping a semi-trailer truck combination on a roadway in dense fog knowing the hazard which would be created.
>
> 2. Operating a second truck in a manner causing it to block the driveway to the potato warehouse, therefore, participating in the creation of a hazard;
>
> 3. Failing to comply with Royal Farms directives for trucks to use two separate entrances, and further, failing to avail itself of an entrance that was not blocked;
>
> 4. Blocking the driveway under circumstances where such a blockage was unnecessary in view of the positioning of other trucks in the potato warehouse lot;
>
> 5. Failing to space the arrival of trucks, as required by Royal Farms, in such a manner as to avoid congestion in the area of the potato warehouse;
>
> 6. Failing to clean off the back of the truck, and failing to maintain the full light capacity of existing lights;
>
> 7. Placing reflective tape on the back of the truck (which was struck by Paulson) in a manner which assured that most of the area of the rear of the truck was not visible, while failing to outline the back of the truck, with reflective tape, in such a manner as would allow traffic to obtain a clear and unmistakable view of the truck; and

> 8. Failing to erect hazard warnings, flares, or triangles on the highway, when the Defendant knew, or should have known, that its trucks were blocking the highway; or were likely to block the highway, so as to avail itself of hazard warnings readily available under the law.

See, Complaint, at 2-3.

With this factual backdrop, we proceed to address the issues that Plainfield seeks to have summarily resolved.

III. Discussion

Plainfield moves for Summary Judgment on two grounds. First, it claims it is entitled to Summary Judgment because Paulson lacks the required factual basis to support his claims of negligence. Second, Plainfield argues that, even if it was negligent, the facts demonstrate that Paulson's own negligence exceeded that of Plainfield, thereby precluding any recovery by Paulson under Minnesota's Comparative Fault Act, Minnesota Statutes Section 604.01.

A. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no

triable issue. See, Luigino's, Inc. v. Peterson, 307 F.3d 909, 911 (8th Cir. 2003)Luigino's, Inc. v. Peterson, 307 F.3d 909, 911 (8th Cir. 2003); Duffy v. McPhillips, 276 F.3d 998 (8th Cir. 2002); Schoolhouse Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002); Krentz v. Robertson Fire Protection Dist., 228 F.3d 897, 901 (8th Cir. 2000). For these purposes, a disputed fact is "material," if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine," if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000); Austin v. Minnesota Mining and Manuf. Co., 193 F.3d 992, 995 (8th Cir. 1999); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Peter v. Wedl, 155 F.3d 992,996 (8th Cir. 1998).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy

Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jauregui v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998). No genuine issue of fact exists in such a case, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

B. Legal Analysis. Having advanced two grounds for Summary Judgment which are distinct, we address each in turn.

1. Plainfield's Claim that Paulson's Allegations Lack a Factual Basis.

Given our diversity jurisdiction over this case, we apply Minnesota law to the issue of negligence. See, Jordan v. Nucor Corp., 295 F.3d 828, 834 (8th Cir. 2002)("In a diversity action for negligence, we apply the law of the forum state."),

citing Fogelbach v. Wal-Mart Stores, Inc., 270 F.3d 696, 698 (8th Cir. 2001). Under Minnesota law, the necessary elements of actionable negligence are: "(1) a duty; (2) breach of that duty; (3) a causal connection between the breach and injury; and (4) injury in fact." Johnson v. State, 553 N.W.2d 40, 49 (Minn. 1996), citing Hudson v. Snyder Body, Inc., 326 N.W.2d 149, 157 (Minn. 1982). As a general proposition, Summary Judgment is rarely appropriate in a negligence action since such claims often raise "a multitude of factual issues, and abstract concepts which become particularly elusive when applied to varying concrete situations." Burk v. Thorson, Inc., 66 F. Supp.2d 1069, 1073 (D. Minn. 1999), citing Hughes v. American Jawa Ltd., 529 F.2d 21, 23 (8th Cir. 1976); Teas v. Minneapolis Street Ry. Co., 70 N.W.2d 358, 363 (Minn. 1955) (negligence is to be determined, as a question of law, "only in the clearest of cases"); Zimprich v. Stratford Homes, Inc., 453 N.W.2d 557, 560 (Minn.App. 1990). However, "[a] defendant in a negligence action is entitled to summary judgment when the record reflects a complete lack of proof on any of the four elements necessary for recovery." Louis v. Louis, 636 N.W.2d 314, 318 (Minn. 2001), citing Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995).

Plainfield argues that it is entitled to Summary Judgment because Paulson has not factually supported his claims of negligence, but instead, has relied on mere speculation and conjecture, which

cannot create a genuine factual dispute as would defeat a Motion for Summary Judgment. Since Paulson has alleged several, distinct claims of negligence, we consider each separately.

a. Paulson's Claim that Plainfield was Negligent in Stopping its Truck on the Roadway.

Plainfield argues that there is no evidence to support Paulson's assertion that Utley was "parked" on Highway 26. Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Defendant's Brief"), at 9. Indeed, Plainfield mantains that the undisputed evidence establishes that Utley was "in the process of making a left-hand turn into Royal Farms' warehouse," at the time of the accident. Id. at 10. Plainfield points to several pieces of evidence which, it believes, support its contention that, at the time of the accident, Utley had merely paused on Highway 26, for the purpose of making a safe turn across a divided highway.

Paulson, however, responds that there is evidence that Utley remained on the roadway longer than was necessary to make a safe left turn, thereby creating a road hazard. First, Paulson presents evidence which shows that, at the time of the accident, the tires of Utley's truck were straight, rather than turned. As a result, Paulson argues that, had Utley actually been in the process of turning into Royal Farms, the tires of his truck would have been turned, and the fact that the tires were straight reveals that Ut-

ley was simply stopped on the Highway. Paulson also disputes Utley's contention that his turn signal was engaged at the time of the accident. To support his view, Paulson points to his own deposition testimony, as well as that of Eugene Boyd ("Boyd"), who is Paulson's father-in-law, and who was a passenger in Paulson's vehicle at the time of the accident, that, when each saw Utley's truck, its turn signal was not activated. Paulson also proffers evidence that suggests that Utley was waiting not only for oncoming traffic to clear, but also for another Plainfield truck to clear the west entrance to Royal Farms, in order to allow him to make his turn.

We find this evidence sufficient to raise a genuine issue of material fact as to whether Utley was stopped, such as to warrant the characterization that he was parked on Highway 26, or stopped in the sense of being paused, so as to render a safe left hand turn. The evidence clearly shows that Utley was poised to make a left-hand turn, but the question remains as to whether being so poised constituted an act of negligence, under the circumstances of this case. Quintessentially, that question is for the Jury. Accordingly, we deny this aspect of Plainfield's Motion for Summary Judgment.

b. <u>Paulson's Claim that Plainfield Negligently Blocked the Entrance to Royal Farms with One of its Trucks</u>.

Paulson advances two distinct claims concerning Plainfield's alleged blockage of Royal Farms' west entrance. The first simply asserts that Plainfield was negligent in "operat[ing] a truck in a manner to block the driveway, and the second contends that Plainfield was negligent in "[b]locking the driveway under circumstances where such blockage was not necessary given the positioning of other trucks in the potato warehouse lot." <u>Complaint</u>, at 2. As to each such claim, we again find that Paulson has proffered sufficient evidence to survive Summary Judgment.

Paulson has offered four pieces of evidence which support his assertion that one of Plainfield's trucks was blocking Royal Farms' entrance at the time of the accident. First, Paulson points to a police report of the accident, which records Utley as stating that he had been waiting, in order to turn into Royal Farms, because there was another truck that was blocking that entrance. See, <u>Exhibit 4 attached to Affidavit of Jason Pederson</u>. Paulson also highlights Jankowski's deposition, where, when presented with Utley's police report, Jankowski testified that Utley's statement, concerning another truck blocking the entrance, was truthful. See, <u>Deposition of Robert Jankowski, attached as Exhibit 11 to Affidavit of</u>

Daniel A. Haws ("Haws Affidavit"), at 11. Third, Paulson notes that, during the deposition of Ron Winscher ("Winscher"), who is a Royal Farms employee, Winscher testified that, when he came outside, just after the accident, he witnessed another Plainfield truck blocking the west entrance, such that another truck would be unable to pull along side it at that entrance. See, Deposition of Ron Winscher, attached as Exhibit 6 to Haws Affidavit, at 10-11. Further, Paulson submits Boyd's testimony that, at the time of the accident, Utley was on Highway 26 waiting to be able to enter into Royal Farms. See, Deposition of Eugene Boyd, attached as Exhibit 5 to Haws Affidavit, at 29. Lastly, Paulson has presented evidence which suggests that, instead of blocking the west entrance to Royal Farms, the truck could have used the east entrance to the facility, which was not as congested.

Plainfield argues, however, that the evidence, including the statements by Paulson and Boyd, and the testimony of Jarett Yourczek ("Yourczek"), who is another Royal Farms employee, support a finding there was no truck blocking the west entrance at the time of the accident. However, such contradictory evidence, and inferences from the evidence, necessitates a resolution by Jurors, who are the finders of fact, thereby defeating an entry of Summary Judgment on those factual questions.

However, Paulson argues that, under Minnesota law, the police report would be inadmissible, and therefore, Utley's statement to the police, which is contained in that report, would be inadmissible at Trial, and could not be relied upon, by Paulson, to defeat Plainfield's Motion for Summary Judgment. We forecast no ruling on the applicability of Minnesota Statutes Section 169.09, Subdivision 13(b), which provides that accident reports cannot be used as evidence in any Trial, except for impeachment purposes, other than to note that, in a Federal diversity case, "state law governs substantive issues and the Federal Rules of Evidence govern the admissibility of evidence." Potts v. Benjamin, 882 F.2d 1320, 1324 (8th Cir. 1989).

Further, we need not now decide whether, under the Federal Rules of Evidence, Utley's statement would be admissible, even if the police report, itself, were not. We need not reach those issues because, even if we were to assume, arguendo, that such evidence would be inadmissible at Trial, Paulson has submitted other evidence to support his contention, including the deposition testimony of Winscher, that another Plainfield truck was blocking the west entrance. Accordingly, we find that Paulson has proffered sufficient evidence to raise a question of material fact, as to the presence of a Plainfield truck blocking the west entrance, at the

time of the accident, to deter the entry of Summary Judgment on this aspect of Paulson's claim.

c. <u>Paulson's Claim that Plainfield was Negligent in Failing to Follow Royal Farms' Directives</u>.

Two of Paulson's negligence claims allege that Plainfield was negligent in failing to comply with Royal Farms' directives. Paulson contends that Plainfield failed to comply with both Royal Farms' directive to alternate the use of the east and west entrances to its facility, and its directive to space the arrival of trucks at Royal Farms, so as so avoid congestion at the warehouse. Plainfield responds, however, that there is no evidence to support the existence of any such directives. In fact, Plainfield offers weighty evidence to the contrary, including the deposition testimony of Walter Parkins, who is an owner of Royal Farms, and the testimony of Royal Farms employees, Yourczek, and Winscher, who have each denied that any such directives exist. Furthermore, Plainfield represents that Paulson, himself, has admitted that there were no explicit directives, from Royal Farms, regarding either truck spacing, or the use of alternate entrances.

In fact, Paulson has admitted that there were no explicit directives, from Royal Farms, but has asserted, instead, that Plainfield was negligent in not following informal directives. Unfortunately for Paulson's argument, however, he has presented no

evidence to support the existence of any such informal directives, but offers conjecture, and surmise, instead. Paulson's unsupported inferences, or surmise, as to the existence of directives, express or implied, is insufficient to withstand a Motion for Summary Judgment. See, Sip-Top, Inc. v. Ekco Group, Inc., 86 F.3d 827, 831-833 (8th Cir. 1996)(holding that, "[w]hen the record contains no proof beyond speculation to support the verdict, judgment as a matter of law is appropriate,"); see also, Schibursky v. International Business Machines Corp., 820 F. Supp. 1169, 1185 (D. Minn. 1993)(finding that a plaintiff "cannot successfully defend a summary judgment motion based on allegation and conjecture."); Zoske v. Lee, 651 N.W.2d 527, 533 (Minn.App. 2002)("While a jury may rely on circumstantial evidence so long as the inferences are reasonably justified by the proof in the case, a jury may not rely on speculation or conjecture.").

As previously explained, under Minnesota law, the first two elements of a negligence claim are a duty, and a breach of that duty. See, Lubbers v. Anderson, supra at 401. Absent any evidence of such a duty, which arguably could arise from directives such as those alleged by Paulson, he cannot state a viable negligence claim, and Plainfield "is entitled to summary judgment as a matter of law when," as here, "the record reflects a complete lack of proof" on an essential element of Paulson's negligence case. Id.

Consequently, Plainfield is entitled to Summary Judgment on this aspect of Paulson's negligence claim.

d. <u>Paulson's Assertion that Plainfield was Negligent in Failing to Clean off the Back of the Truck, and to Maintain the Full Illumination Capability of the Truck's Lights</u>.

Paulson alleges that Plainfield was negligent in failing to clean the back of Utley's truck, which caused the lights on the truck to become dirty, and therefore, not fully visible to him. He also alleges that, when he came upon the truck, neither its turn signal, nor its hazard lights, were activated. According to Paulson, Plainfield's negligent failure to keep its truck clean, and to activate its warning lights, prevented him from seeing the truck in time to prevent him from crashing into it.

Once again, we conclude that Paulson has presented sufficient evidence to survive Plainfield's Motion for Summary Judgment. Paulson has proffered evidence, in the form of his own deposition testimony, the deposition testimony of Boyd, and photographs of the truck, to support his assertion, that the truck's rear lights were not visible under the conditions existing on the day of the accident, and that the truck had no warning lights that were activated as he approached.

Plainfield argues, however, that Utley's deposition provides evidence that the truck had been washed on the day before the accident, and that Utley had wiped the lights of the truck clean, consistent with his usual practice. Plainfield contends that, absent some evidence of an undisputed duty to wash the truck, or the lights on the truck, more frequently than asserted here, Paulson cannot viably state a claim for negligence. We disagree. The question for the Jury to resolve, based on a reasonableness standard, is whether ordinary care would have required Plainfield to wash the rear of the truck, and/or its tail lights, in view of the circumstances presented just before the accident at issue. While the Jury could conclude, that the daily washing of the truck, and its tail lights, as claimed by Plainfield, was adequate, dependent upon the evidence at the time of Trial, the Jury could also conclude that Plainfield failed in that duty. See, <u>Canada By and Through Landy v. McCarthy</u>, 567 N.W.2d 496, 505 (Minn. 1997)("The question of negligence is ordinarily a question of fact and not susceptible to summary adjudication.").

As to the second part of Paulson's claim concerning the condition of the truck -- whether Plainfield was negligent in "fail[ing] to maintain the full light capacity of existing lights," <u>Complaint</u> at 3 -- Paulson appears to contend that Utley had not activated the turn signal or, alternatively, the hazard lights, and that, had he

done so, the truck would have been more visible, so as to allow him to avoid the resultant collision. Plainfield responds by noting that it has presented expert opinion evidence to demonstrate that, on the day of the accident, the truck's lighting was lawful, and that, based upon his review of photographs taken of the accident, the truck would have been sufficiently visible. Although the Plainfield acknowledges that a dispute exists as to whether Utley had activated his left-turn signal prior to the accident, it contends that dispute is immaterial, as Paulson has offered no expert opinion evidence that the illumination of the turn-signal would have rendered the truck more visible to him.

While inventive, Plainfield's argument misses the point. The lighting of the back of Plainfield's truck could comply with all applicable traffic regulations, but if the lights were obscured by dirt and street grime, or were not augmented by the punctuation of a blinking light displayed by a turn signal, the compliance of the lighting with applicable traffic regulations would not insulate Plainfield from a finding of negligence. Whether the arguably compliant lights of Plainfield's truck should be adequate to defeat Paulson's negligence claim is properly left to the Jury's consideration in the context of the Record presented at Trial, upon proper Jury Instructions on the governing law. While the expert opinion of one who is qualified to testify as an expert might assist the

Jury in that regard, the mere proffer of expert opinion does not deprive the Jury of its sole province to resolve disputed facts.

As we explained at the Hearing, in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 595 (1993), the Supreme Court held that an expert's opinion is only admissible if it is relevant, and reliable, although not all topics are amenable to the provision of expert testimony. "Expert testimony is reliable, if 'the reasoning or methodology underlying the testimony is scientifically valid.'" Group Health Plan, Inc. v. Philip Morris, Inc., 188 F.Supp.2d 1122, 1130 (8th Cir. 2002), quoting Daubert v Merrell Dow Pharmaceuticals, Inc., supra at 592. Under this Rule, it is for the Court to determine whether "evidence is genuinely scientific," or is, instead, "unsci-entific speculation offered by a genuine scientist." Rosen v. Ciba-Geigy Corp., 78 F.3d 316, 318 (7th Cir. 1996).

We have more than passing doubt that an expert, who has not duplicated the conditions extant at the time of a motor vehicle accident, can reliably testify as to the visibility of the back of a truck that the expert has not personally observed in situ. We need not, and do not, decide that issue here, on this undeveloped Record, but we are satisfied that, at this preliminary juncture, the proffered expert opinion is insufficient to remove this issue of causation from the Jury's province. See, Canada By and Through

Landy v. McCarthy, supra at 506 ("Generally, whether the defendant's negligence proximately caused the plaintiff's injuries is a question of fact for the jury."), citing Lubbers v. Anderson, supra at 402. Therefore, finding a plain and genuine issue of material fact, we deny Summary Judgment on this issue.

e. Paulson's Claim that Plainfield was Negligent in its Placement of Reflective Tape on the Rear of the Truck.

Paulson has also alleged that Plainfield was negligent in "[p]lacing reflective tape on the back of the truck * * * in such a manner [as to assure] that most of the area of the rear of the truck was not visible," and in "failing to outline the back of the truck with reflective tape in a manner [as to] allow[] traffic to obtain a clear unmistakable view of the truck." Complaint, at 3. We conclude, however, that Plainfield is entitled to Summary Judgment on those claims.

Plainfield has produced the report of its expert, Michael S. McBride, who has opined that the "rear retro reflective sheeting on the [truck at issue] indicates that it was in full compliance with Federal Motor Carrier Safety Regulations part 393 in-force at the time of the crash." Expert Report of Michael S. McBride attached as Exhibit 9 to Haws Affidavit. Plainfield posits that the amount, and the placement of reflective tape, that must be applied to a

truck, is a matter of regulation, such that the Paulson must present evidence that counters the expert opinion that Plainfield was in full compliance with those regulations, in order to state a cognizable claim. We agree.

Paulson's mere opinion, or belief, that more reflective tape should have been applied, or that the reflective tape should have been applied in particular patterns, is wholly insufficient to overcome Plainfield's compliance with the governing regulations, so as to state a claim that Plainfield was negligent in the placement of such reflective tape. Had Paulson proffered evidence that Plainfield had failed to comply with the governing regulations, so as to counter Plainfield's compliance evidence, then a different question would confront us, but that conflict in evidence is not presented here. Lest there be any doubt, however, we do not hold that the mere fact of Plainfield's compliance, with the reflective tape regulations, would insulates it from liability if the Jury concludes that, notwithstanding that compliance, Plainfield was otherwise negligent in cleaning the back of the truck, and its rear lighting. Nonetheless, on the specific issue of the reflective tape, we grant Summary Judgment to Plainfield.

f. Paulson's Claim that Plainfield was Negligent in Failing to Erect Hazard Warnings on the Road.

In conjunction with his assertion, that Plainfield's truck was negligently stopped on Highway 26 at the time of the accident, Paulson also alleges that Plainfield was negligent in failing to erect hazard warnings -- such as flares -- on the roadway, once the truck was stopped. We conclude that this assertion also withstands Summary Judgment.

Plainfield first contends that Paulson has abandoned this claim as, during his deposition, he admitted to no knowledge about this claim, and agreed with counsel for Plainfield that it would not make sense for a person to have to exit his or her vehicle, in order to erect warning signs, every time the person had to make a lefthand turn, and could not do so immediately. In addition, Plainfield maintains that, even if Paulson is asserting such a claim, that the undisputed evidence reflects that there is no legal obligation for a driver, who makes a lefthand turn, to erect any such warning devices, as they are only to be employed in emergency situations, by operators of disabled vehicles.

We find no merit to Plainfield's first argument. Most assuredly, a litigant is unaware of the each legal theory of his or her attorney and, in fact, the prime reason to retain legal counsel

is to gain the knowledge and experience that such counsel can offer. Paulson's responses, at his deposition, may well undermine the probative weight of his counsel's legal theories, but his responses do not waive his right to advance such a legal theory, absent a showing that, as a matter of law, the theory is untenable. Here, Plainfield has presented no such showing.

We find, on the Record presented, that a Jury could reasonably find that Utley's truck was improperly stopped on the roadway, and we leave it to the Jury, in the absence of a different showing at Trial, to determine whether the reasonable person, under the same or similar circumstances, would have concluded that a flare, or other warning device, would have reasonably reduced the hazards presented. The Jury is uniquely suited to assess what actions are counseled by objective reasonableness, and Plainfield offers neither evidence, nor logic, to demonstrate that such warning devices would never be objectively reasonable. We are mindful of Plainfield's contention, that the truck was not poised to turn left long enough to allow the placement of warning devices, but that is not a contention that is without contest. Plainfield admits that, under some circumstances, a driver must erect warning devices to alert other drivers of the presence of a vehicle and, at least on this Record, we leave that question for the Jury's resolution.

Accordingly, finding material facts genuinely at issue, we deny Summary Judgment in this respect.

2. Plainfield's Contention that Paulson is Precluded from Recovery, as a Matter of Law, under the Comparative Fault Act.

Minnesota has enacted the Comparative Fault Act, which replaced the doctrine of contributory negligence in tort claims, with the notion of comparative fault. See, Minnesota Statutes §604.01. The Comparative Fault Act provides as follows:

> Contributory fault does not bar recovery in an action by any person * * * to recover damages for fault resulting in * * * injury to person or property, or in economic loss, if the contributory fault was not greater than the fault of the person against whom recovery is sought, but any damages allowed must be diminished in proportion to the amount of fault attributable to the person recovering.

Under the Act, Paulson would not be denied a recovery in this negligence action, because of his own fault, unless that fault was greater than that attributable to Plainfield. Plainfield asserts that it is entitled to Summary Judgment under the Act because, as a matter of law, Paulson's fault was greater than its own.

In support of its argument, the Defendant relies heavily on the Minnesota Court of Appeals' decision in Efteland v. Holte, 1998 WL 887480 (Minn.App. December 22, 1998), rev. denied (Minn., March 16, 1999), and argues that the facts, here, are nearly identical to

those before that Court, thereby warranting our emulation of the result that the Court reached there. We are not so persuaded.[1]

In Efteland, the plaintiff drove into a cloud of smoke, that was created by a fire, and rear-ended another driver, Palmer Holte ("Holte"). The plaintiff's vehicle was then spun into the opposing lane of traffic, where she was hit by Rodney Wold ("Wold"). The plaintiff sued both Holte, and Wold, for negligence, and Holte was granted Summary Judgment. On appeal, the plaintiff argued that issues of fact precluded that award. The Court of Appeals noted that "determining whether a party acted negligently is typically a jury question, but summary judgment is appropriate when the undisputed evidence only leads to one conclusion." Id. at *1, citing Jack Frost Inc. v. Engineered Bldg. Components Co., 304

[1]We address the substance of the Court's holding, in Efteland v. Holte, 1998 WL 887480 (Minn.App. December 22, 1998), notwithstanding that, as an unpublished decision, the holding has no precedential weight even in the Minnesota State Courts. See, Minnesota Statutes Section 480A.08, Subdivision 3; Dynamic Air, Inc. v. Bloch, 502 N.W.2d 796, 800 (Minn.App. 1993)("At best, [unpublished] opinions can be of persuasive weight."). Moreover, since the decision represents something other than an expression of Minnesota's highest Court, even if it were published, the holding in Efteland would only be entitled to "some weight." See, Comm'r v. Estate of Bosch, 387 U.S. 456, 465 (1967); see also, Willis v. County of Sherburne, 555 N.W.2d 277, 282 (Minn. 1996)(holding that, until adopted by the Minnesota Supreme Court, the published opinions of the Minnesota Court of Appeals do not represent a definitive statement of the law of Minnesota).

N.W.2d 346, 350 (Minn. 1981). The Court then proceeded to list the following six undisputed facts in the case:

> (1) driving conditions on the day of the accident were hazardous; (2) the road's shoulder is gravel and three feet wide; (3) a ditch runs alongside Highway 219; (4) a witness testified that she almost drove her car off the road and into a ditch while traveling approximately 5 [miles per hour] that morning; (5) Holte slowed to 3-10 [miles per hour] because of the hazardous driving conditions; (6) Efteland did not reduce her speed from 40-45 [miles per hour] when she approached the blanket of smoke covering the road.

Id.

On the basis of those undisputed facts, the Court held that Holte had acted reasonably, and was not negligent, or alternatively, that even if Holte had been negligent, that the plaintiff's own negligence, exceeded Holte's, and that, "[u]nder these circumstances, the trial court properly granted Holte summary judgment." Id., citing Winge v. Minnesota Transfer Ry. Co., 201 N.W.2d 259, 263-64 (Minn. 1972); Sauter v. Sauter, 70 N.W.2d 351, 354 (Minn. 1955).

Plainfield asserts that "[t]he undisputed facts in this case are nearly identical to those in Efteland." Defendant's Brief, at 17. To support the contention, Plainfield notes that, on the morning of the accident, the road conditions were hazardous due to heavy fog, which it likened to the road conditions created by the smoke in Efteland. It also contends that, like the lack of a shoulder, and a ditch running alongside the road in Efteland, here,

"there [was] 'maybe a three-foot shoulder' before [the road] drop-[ped] out into a ditch." Id., citing Deposition of Yourczek attached as Exhibit 6 to Haws Affidavit. Plainfield further points to the evidence, in Efteland, that another driver had slowed to five miles per hour because of the road conditions, and the analogous evidence that Jankowski, who was traveling just ahead of Utley, had slowed to ten or fifteen miles per hour, in the quarter of a mile just before arriving at Royal Farms.

Plainfield also contends that the evidence shows that, just like the plaintiff in Efteland, Paulson was traveling between forty and fifty miles per hour at the time of the accident. Finally, Plainfield maintains that, as was true in Efteland, the evidence here shows that Plainfield was not negligent, since Utley was driving slowly behind Jankowsi, properly signaled his turn, and stopped briefly to negotiate that turn, with the truck's headlights, and turn signals activated, and visible, and its reflective tape appropriately in place.

Objectively read, we find the circumstances in Efteland distinguishable. There, the defendant was traveling at a slow rate of speed which, given the visibility conditions of that day, and the evidence of the speed of other drivers, was a reasonable rate, as a matter of law. In contrast, here, we have a Jury question as to whether Utley was actually stopped on the Highway for an extended

period of time, without having activated either his turn signal, or hazard lights, or having erected warning devices. While it may well be that Paulson was negligent in his failure to reduce his speed even further, in view of the conditions of the day, we cannot say, as the Court could, in Efteland, that Paulson's negligence so vastly overshadowed Plainfield's as to preclude a recovery, on Paulson's part, as a matter of law. Accordingly, we deny Plainfield's Motion for Summary Judgment, on the basis of the Minnesota Comparative Fault Act, as without merit.

NOW, THEREFORE, It is -

ORDERED:

That the Defendant's Motion [Docket No. 18] for Summary Judgment be granted, in part.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE