UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

LeRoy Paulson,

Plaintiff,

vs. ORDER

Plainfield Trucking, Inc.,

Defendant. Civ. No. 01-1474 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 21st day of November, 2003.

## I. Introduction

On November 6, 2003, the Court heard argument on the Plaintiff's Motion to Exclude Testimony of Expert Witness. At the time of the Hearing, the Plaintiff LeRoy Paulson ("Paulson") appeared by Jason D. Pederson, Esq., and the Defendant Plainfield Trucking, Inc. ("Plainfield") appeared by Stacy E. Ertz, Esq. For reasons expressed at the close of the Hearing, and briefly reiterated below, the Plaintiff's Motion to Exclude Testimony of Expert Witness is granted, in part.

## II. Procedural and Factual Background

This case arises out of an accident that occurred on February 22, 2000. At that time, Paulson was driving a tow truck, which crashed into the rear of a semi-trailer which was being driven by

38

NOV 21 2003

Steven Utley ("Utley"), who was then an employee of Plainfield. The accident occurred when Utley was stopped, outside of Royal Farms, on a divided highway, while waiting to turn left into the Royal Farms' warehouse. Apparently, visibility was reduced at the time by fog.

As a result of the accident, Paulson is suing Plainfield, alleging that it was negligent for a number of reasons, including the stopping of the semi-trailer on the roadway in fog; the operation of a second semi-trailer so as to block the entrance to the warehouse; the failure to comply with Royal Farms' directive to use separate entrances; the failure to space trucks in intervals as required by Royal Farms; the failure to clean trucks; the failure to use reflective tape; and the failure to erect hazard signs, warnings, or flares.

## III. Discussion

At Trial, Plainfield intends to introduce the testimony of Michael S. McBride ("McBride") as an expert witness. Plainfield contends that McBride's testimony at Trial, based on the conclusions stated in his Report, will be as follows:

1. The right side of Paulson's truck was well out onto the shoulder at the time of the impact;

2. The contact damage to the trailer was to its suspension and tandem axles;

3. The principal direction of force causing this damage was nearly straight from the rear toward the front;

4. The contact damage to the tow truck was to the left two thirds of the front of the truck and the principal direction of force causing the damage to the Paulson vehicle was nearly straight from front to rear;

5. The pattern of the damage of the two vehicles indicates that the Paulson vehicle was approaching the impact in a nearly straight line;

6. No evasive action was taken by Paulson prior to impact due to the damage pattern on the Plainfield and Paulson truck and the lack of rotation by the vehicles following impact;

7. A vehicle driven by Paulson at 40 to 50 mph, would need 88 to 138 feet in order to skid to a stop on a damp asphalt surface;

8. Perception and reaction time would result in a stopping distance of 132 to 193 feet at those speeds;

9. At a speed of 40 mph, and a reaction time of 1.5 second, Paulson would need more that 176 feet to stop;

10. The trailer and tractor had legal lights and rear reflective sheeting;

11. There is no prohibition against Utley making a left hand turn in fog on the road in question;

12. Utley's position in the land with his front wheels straight is the proper defensive driving technique to keep your

vehicle from being pushed into oncoming traffic should a rear-end collision take place. A driver should never turn the wheels prior to starting their turn;

13. There was more than a four foot contact overlap between the vehicles;

14. There was not enough room for Paulson to pass on the right;

15. Placement of warning devices was not required, practical or possible;

16. Traffic congestion had nothing to do with the accident;

17. There was no Plainfield truck sitting in the driveway so as to block Utley's entrance; and

18. The collision occurred because Paulson was driving too fast for conditions.

Defendant Plainfield Trucking Inc.'s Memorandum of Law in Opposition to Plaintiff's Motion to Exclude Testimony of Expert, at pp. 5-6, citing McBride Report.

Paulson seeks to exclude the testimony of McBride on the ground that McBride's conclusions are not reliable or relevant.

A. Standard of Review. "The admissibility of expert testimony is governed, in large measure, by Rule 702, Federal Rules of Evidence, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2)

> the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Teska v. Potlatch Corp., 184 F. Supp.2d 913, 918 (D. Minn. 2002), citing Rule 702, Federal Rules of Evidence (2001); see also, Medalen v. Tiger Drylac U.S.A., Inc., 269 F. Supp.2d 1118, 1127 (D. Minn. 2003).[1]

"As the Supreme Court has explained, 'Rules 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the "assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline."'" Engleson v. Little Falls Area Chamber of Commerce, 210 F.R.D. 667, 670 (D. Minn. 2002), quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148 (1999), quoting, in turn, Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993). "When evaluating the admissibility of expert testimony, a Court must look to both the relevance, and the reliability, of the proffered testimony." Id., citing Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir.

---

[1]Rule 703, Federal Rules of Evidence, also imposes the following restrictions on the provision of expert opinion evidence:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

2001); see also, Daubert v. Merrell Dow Pharm., Inc., supra at 591-93; Bonner v. ISP Technologies, Inc., supra at 929; Jauregui v. Carter Mfg. Co., supra at 1082.

"'When it comes to admission of expert testimony under the Federal Rules of Evidence, a trial judge has a gatekeeping responsibility to "ensur[e] that an expert's testimony rests on a reliable foundation and is relevant to the task at hand."'" Id., quoting Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 714-15 (8th Cir.2001), quoting, in turn, Kumho Tire Co., Ltd. v. Carmichael, supra at 141. "'Both the Eighth Circuit Court of Appeals and the Supreme Court have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that expertise, or that are not founded on a reliable methodology.'" Teska v. Potlatch Corp., at 919, quoting Smith v. Rasmussen, 57 F. Supp.2d 736, 766 (N.D. Iowa 1999), citing Kumho Tire Co., Ltd. v. Carmichael, supra at 141.

"Ultimately, 'it is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case.'" Id., quoting Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., supra at 715, 254 F.3d 706, citing Kumho Tire Co., Ltd. v. Carmichael, supra at 156, 119 S.Ct. 1167. "'Once

initial expert qualifications and usefulness to the jury are established, however, a district court must continue to perform its gatekeeping role by ensuring that the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702, Kumho Tire, and related precedents.'" Id., quoting Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., supra at 715.

"'[B]efore accepting the testimony and opinion of an expert witness, the Trial Court is charged with the "gatekeeper" function of determining whether the opinion is based upon sound, reliable theory, or whether it constitutes rank speculation.'" Id., quoting Kemp v. Tyson Seafood Group, Inc., 2000 WL 1062105 at *2 (D. Minn., July 19, 2000), citing Kumho Tire Co. v. Carmichael, supra at 141, 119 S.Ct. 1167, and Daubert v. Merrell Dow Pharmaceuticals, Inc., supra at 589-90. "'Expert testimony that is speculative is not competent proof and contributes "nothing to a legally sufficient evidentiary basis."'" Id., quoting Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1057 (8th Cir.2000), quoting, in turn, Weisgram v. Marley Co., 528 U.S. 440, 454 (2000).

"As the Court in Kumho made clear, the Trial Court's gatekeeping function is to be employed for all expert testimony." Id., citing Kumho Tire Co. v. Carmichael, supra at 141, 119 S.Ct. 1167 ("We conclude that Daubert's general holding -- setting forth the

trial judge's general 'gatekeeping' obligation -- applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."); see also, Rule 702, Federal Rules of Evidence, Advisory Committee Notes to 2000 Amendments ("Consistently with Kumho, the Rule as amended provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful.").

"In the final analysis, '[i]n order to be helpful to the trier of fact, the witness must be qualified as an expert, the expert must have a reasonable factual basis for their testimony, the testimony must be based on reliable methods, and the testimony must be relevant to the facts at issue.'" Engleson v. Little Falls Area Chamber of Commerce, supra at 671, quoting Kemp v. Tyson Seafood Group, Inc., supra at *2. As the Supreme Court, in General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997), succinctly observed:

> Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply to great an analytical gap between the data and the opinion proffered.

With these precepts in mind, we turn to McBride's proffered expert testimony.

B. Legal Analysis. Paulson concedes that McBride is qualified to testify at Trial as an expert witness.[2] Paulson objects, however, to the substance of McBride's proffered testimony because, in his view, the conclusions expressed in McBride's Report are not reliable or relevant. As we expressed at the close of the Hearing, the scope of the testimony to which McBride will be allowed to testify at Trial is narrow, as McBride did not investigate the accident as part of any official investigation, or as a non-interested party, but instead, was hired to assist Plainfield in this litigation.

As we further stated, while we will not rule, from this pretrial perspective, on each of McBride's conclusions individually, McBride will only be allowed to testify to those findings

---

[2]We also find McBride qualified to testify at Trial. McBride is certified as an accident reconstruction specialist by the International Association of Accident Reconstruction Specialists, and as a traffic accident reconstructionist by the national Accreditation Commission for Traffic Accident Reconstruction. Further, McBride investigated thousands of traffic accidents during his twenty-eight year career with the Minnesota State Patrol. From 1997 to present, McBride has served as an Accident Reconstruction Consultant for Lofgren Associates, Inc. See, Affidavit of Stacy Ertz, Ex. 6 [Docket No. 34]. Certified accident reconstructionists are qualified to testify as expert witnesses. See, e.g., Smith v. BMW North America, Inc., 308 F.3d 913 (8th Cir. 2002); J.B. Hunt Transport, Inc. v. General Motors Corp., 52 F. Supp.2d 1084, 1088 (E.D. Mo. 1999).

that are unique to his knowledge as an expert, and which are soundly based on scientific methodologies. See, J.B. Hunt Transp., Inc. v. Gen. Motors Corp., 243 F.3d 441, 444 (8th Cir. 2001). McBride will not be allowed to testify concerning the substance of the governing law, or the rules of the road. See, Hernandez v. Flor, 2003 WL 193683 at *3 (D. Minn., January 16, 2003)("[T]he Court will exclude all testimony by [the expert] that purports to interpret the law."). Nor will he be allowed to testify to things readily perceivable to the Jury from photographs, or other demonstrative aids. Teska v. Potlatch Corporation, supra at 921-922 ("If, however, the acts or omissions complained of are within the general knowledge and experience of lay persons, expert testimony is not necessary to establish a standard of care, even in cases of alleged medical malpractice."). McBride will be allowed to testify, generally, to matters of force, and speed, but he will not be allowed to testify concerning the speed of Paulson's vehicle in the absence of skid marks or other objective evidence, on which such a finding may be reliably based. McBride's testimony may not contradict the testimony of lay witnesses.

Further, Plainfield may not make otherwise inadmissible conclusions or opinions admissible simply by passing them through McBride. For instance, the Jury, alone, will decide if it was possible for Paulson to pass the Plainfield vehicle on the right

shoulder of the roadway. Lastly, McBride will not be allowed to testify to the credibility of any witness, and he certainly be will prohibited from offering any opinion on the issue of fault. We suspect, without now detailing, that there will be other areas in which McBride will be curtailed in the provision of expertise, because the opinions would be self-obvious, not helpful to the Jury, or based upon an insufficient factual predicate. Those rulings will be made in the context of McBride's testimony up to the point at which the opinion is proffered.

NOW, THEREFORE, It is --

ORDERED:

That the Plaintiff's Motion to Exclude Testimony of Expert Witness [Docket No. 35] is GRANTED, in part.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

For Immediate Release
October 30, 2003

# PRESS RELEASE

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
300 South Fourth Street, Suite 202, Minneapolis, Minnesota
Contact: Richard D. Sletten, Clerk, (612) 664-5026

## FEDERAL COURT AMENDS LOCAL PRACTICE RULES

The U.S. District Court for the District of Minnesota announces the approval, of amendments to its local rules of practice recommended by the Court's Federal Practice Committee chaired by Minneapolis Attorney Jeff Keyes of the Briggs and Morgan law firm.

Local Rules 67.1 and 83.11 amendments:

### LR 67.1 MONEY PAID INTO COURT

Unless otherwise ordered by the Court, all monies coming into the registry of this Court shall be deposited in an interest bearing account in a depository approved by the Treasurer of the United States, subject to withdrawl by checks drawn by the Clerk of Court pursuant to orders of the Court. The Clerk of Court shall deduct from the income earned on the investment a registry fee, as set by the Director of the Administrative Office of the United States Courts. The fee will be deducted when funds are withdrawn and distributed. For further registry fee information, refer to the Guide to Judiciary Policy and Procedures Chapter VII, Financial Management, Part I, Registry Funds.

### LR 83.11 DIVISIONS, OFFICES OF THE CLERK, CALENDARS

(a) Divisions. The State of Minnesota constitutes one judicial district, divided into six divisions. Cases in this District are assigned to particular divisions and particular judges pursuant to the Order for Assignment of Cases that has been adopted by the Judges of the District Court. The Order for Assignment of Cases may be modified from time to time as the District Court Judges see fit.

(b) Offices of the Clerk. The Clerk of Court maintains offices in St. Paul, Minneapolis, and Duluth. The St. Paul, Minneapolis and Duluth offices are open from 8:00 a.m. to 5:00 p.m. All offices are open Monday through Friday, with the following exceptions: New Year's Day; Martin Luther King, Jr.'s Birthday; President's Day; Memorial Day; Independence Day; Labor Day; Columbus Day; Veterans Day; Thanksgiving Day; and Christmas Day.

The files for matters pending before the Court are maintained in the office in the division to which the case is assigned. However, papers relative to any case may be filed in any office.

(c) Calendars. The Court operates on an individual calendar system. Judges in active service are assigned and assume responsibility for their proportionate

share of the total cases filed in the district. Inquiries as to motions, probable trial date, or other matters having to do with a particular case may be addressed to the deputy clerk serving as calendar clerk for the Judge to whom the case has been assigned.